## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| **LAWRENCE WESLEY WALKER,** | |
| Plaintiff, | |
| v. | Civil Action No. 7:12-CV-137 (HL) |
| **CITY OF HOMERVILLE, a Municipal Corporation; MARGARET PEG BLITCH, Individually and as Mayor of the City of Homerville; WILLIE ALFORD HARDEE, Individually and as City Councilman for the City of Homerville; AND WILLIAM VEST, Individually and as a City Councilman for the City of Homerville, Georgia,** | |
| Defendants. | |

## ORDER

Before the Court is the Motion for Summary Judgment (Doc. 18) filed by Defendants City of Homerville ("Homerville"); Margaret Peg Blitch ("Blitch"), individually and in her capacity as mayor of Homerville; Willie Alford Hardee ("Hardee"), individually and in his capacity as councilman for Homerville; and William Vest ("Vest"), individually and in his official capacity as councilman for Homerville (collectively "Defendants"). Defendants' motion is granted in part, and denied in part.

## I.      Factual Background

This lawsuit arises from the alleged wrongful termination of Plaintiff as Homerville's chief of police. Seen in the light most favorable to Plaintiff,[1] the facts show that the Homerville City Council elected Plaintiff as chief of police on March 22, 2010, and ended his employment on January 4, 2011. Although there was never a written employment contract, Plaintiff met with the city council and Mayor Blitch prior to being hired and was told that if elected he would serve on a year-to-year basis subject to reappointment by the city council. (Plaintiff's Deposition, Doc. 26, pp. 11-13, 101-03, 113-15).

The Homerville City Council elected Plaintiff as chief of police in accordance with the provisions of the Homerville City Charter, which govern the election and removal of chiefs of police. The charter contains the following provision:

> [A]t the first regular meeting of the city council of Homerville on the first Tuesday in January of each year, they shall elect one of their number mayor pro tempore for a term of one year….The city council may also at said meetings elect for said city a chief of police and as many policemen as they deem necessary, a recorder, clerk and treasurer; a city attorney and city physician, and may elect such other officers and employees of said city as they may deem necessary; and they shall have the power to fix and

---

[1] Defendants have objected to the admissibility of certain exhibits Plaintiff offered in opposition to the summary judgment motion. (Defendants' Federal Rule of Civil Procedure 56(c)(2) Objection to Plaintiff's Exhibit, Doc. 31). The Court will not comment on the objection because this Order does not reference the disputed exhibits. Any evidentiary objections that are properly raised during trial can be dealt with then.

provide for the salaries and compensation of the officers or employees so elected. All of said officers shall be elected for terms of one year, and until their successors shall be elected and qualified, unless sooner discharged and removed from office. Each of said officers shall take such oath of office, give such bonds, and perform such duties as shall be fixed by ordinance; and the city council of Homerville shall have power and authority to suspend and remove such officers, or impose fines on said officers for gross neglect or malfeasance, after a fair and impartial trial.

(Homerville City Charter, Doc. 18-1, p. 13, Section 17).

Although the city council instructed Plaintiff to address the high crime rate in an area of the city known as Pea Ridge, Defendants became displeased with how he did so. (Doc. 26, pp. 59-61). In November 2010 Plaintiff uncovered an illegal commercial gambling operation in a house in Pea Ridge. The operator was arrested and had felony charges brought against him, although he quickly renewed his operation. On the night of December 11, 2010, Plaintiff led a second raid on the gambling house that revealed the gambling had recommenced. Following both raids, the police issued misdemeanor citations against the people who were gambling in the house and confiscated their money.[2] (Id. at 69-74, 84).

Early in the morning of December 12, Mayor Blitch called Plaintiff and told him that the gamblers had come to her house to complain of the citations and the confiscation of their money. Blitch was upset with Plaintiff and said that she did

---

[2] Subsequent to Plaintiff's termination in January 2011, the operator of the commercial gambling was convicted of the felony charges, although the misdemeanor citations against the gamblers were dismissed. (Doc. 26, pp. 69-74).

not think the individuals had been engaged in illegal gambling because they had poker chips on the table rather than cash. (Id. at 74-76, 83-84).

When Plaintiff returned to work on Monday, December 13, Councilman Hardee came to Plaintiff's office, echoed Blitch's belief that illegal gambling had not occurred, and cautioned Plaintiff that he would lose his job if he did not dismiss the misdemeanor citations. Councilman Vest joined the conversation later and said Plaintiff should reduce the citations to a warning and return the gamblers' money. Plaintiff explained that the gambling investigation was ongoing and that he needed a free hand to complete it. The city manager, who had also joined the conversation, supported Plaintiff's request. Hardee and Vest warned that to keep his job Plaintiff had to comply with their demands and said that three members of the city council and Mayor Blitch agreed with them. (Id. at 84-93).

Concerned that he would violate his oath of office by submitting to the Defendants, Plaintiff spoke with the Homerville city attorney and the local district attorney and, based on the conversations, decided to continue with the investigation. Mayor Blitch called Plaintiff on the afternoon of December 13 to see if he had made a decision about the gambling citations. After Plaintiff told her he would not dismiss the citations, she warned him that he was "in big trouble," and when he asked what she meant, she replied, "You'll see very soon." (Id. at 93-95).

On January 4, 2011, the Homerville City Council held its first meeting of the new year and voted on whether to keep Plaintiff as chief of police. Plaintiff attended the council meeting but was not given an opportunity to speak. Two council members, including Defendant Vest, voted to keep Plaintiff and two members voted for his discharge. Mayor Blitch provided the tie-breaking vote and voted for his removal. (Id. at 101-03, 115-16).

There is conflicting evidence as to whether the Homerville City Council became displeased with Plaintiff's work prior to December 12, 2010. Defendant Hardee, who served as both police commissioner and a councilman, gave consistently favorable reports on Plaintiff and the police department to the city council. While working for Homerville, Plaintiff learned that his state certification as a police officer was in jeopardy. He informed Mayor Blitch and the city council of this issue, and the mayor and one of the councilmen accompanied him to a hearing to speak on behalf of his ultimately successful petition for a waiver of the state's certification requirements. At the hearing, Blitch spoke glowingly of Plaintiff's work in Homerville. (Id. at 50-56, 61-67). However, during Plaintiff's time in office, the city lost the privilege of housing its inmates at the Clinch County jail. After the city council instructed Plaintiff to reduce the police department's budget, Plaintiff learned that the city could save money by paying the county on a per-inmate basis rather than making an annual payment. The city

5

council followed Plaintiff's recommendation to cut the annual payment, but negotiations with the county foundered, and Homerville was forced to transport its inmates to other county jails. (Id. at 80-82).

Alleging that he had a verbal employment contract with the City of Homerville, Plaintiff brought this lawsuit against Defendants for violation of his rights to equal protection and due process under the United States Constitution; retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[3]; wrongful termination; breach of contract; oppressive and tyrannical partiality in the administration of public office in violation of O.C.G.A. § 45-11-4; and tortious interference with business relations. (Complaint, Doc. 1, ¶¶23-44).

## II.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

[3] The complaint does not contain a Title VII retaliation claim, but the Court will address this omission below.

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.    Legal Analysis

Because the nature of Plaintiff's employment agreement with Homerville is central to the Court's analysis of his claims, the Court will first consider the breach of contract claim before turning to the wrongful termination, due process, equal protection, partiality in violation of O.C.G.A. § 45-11-4, Title VII retaliation, and tortious interference with business relations claims. The Court will apply Georgia substantive law to Plaintiff's state law claims. Lopez v. Target Corp., 676 F.3d 1230, 1235-36 (11th Cir. 2012).

#### A.    Breach of Contract Claim

The Court denies summary judgment on the breach of contract claim. Plaintiff's claim is a product of state law, and so Georgia law must be applied.[4] *See* Goia v. CitiFinancial Auto, 499 F. App'x 930, 940 (11th Cir. 2012); Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C., 596 F.3d 1313, 1325-27 (11th Cir. 2010). Under Georgia law, "[t]he interpretation of a contract is normally a question of law to be resolved by the court." Willesen v. Ernest Commc'ns, Inc., 323 Ga. App. 457, 459, 746 S.E.2d 755 (2013) (internal citations omitted). A court must first determine whether the contract provisions in dispute are ambiguous. Id. If the provisions are not ambiguous, the court must "enforce the contract according to its terms," but if there is ambiguity, the statutory rules of

---

[4] The parties do not dispute that Georgia law applies to the breach of contract claim.

construction must be applied to determine the intent of the parties. Id. These rules include the principle of *contra proferentem*, that any ambiguity should be construed against the party that drafted the contract. Id. at 460, 746 S.E.2d 755; Perling v. Citizens & S. Nat'l Bank, 250 Ga. 674, 676, 300 S.E.2d 649 (1983); O.C.G.A. § 13-2-2(5). A court may refer to parol evidence to resolve any ambiguity. Krogh v. Pargar, LLC, 277 Ga. App. 35, 39, 625 S.E.2d 435 (2005).

While not disputing that Plaintiff had a valid employment contract with the City of Homerville, Defendants argue that the verbal agreement did not guarantee Plaintiff could only be terminated for cause. Defendants contend there is a general principle in Georgia law that employment is at will if there is no provision in the employment contract, state statute, city ordinance, city charter, or personnel regulation stating otherwise. Defendants have, however, overlooked an important exception to this general principle.

In Georgia if an employer hires an employee for a definite term, then the employer must meet its "duty of good faith and fair dealing in the performance and completion" of the contract, even if the contract does not expressly state termination could only be for cause. Mail Adver. Sys., Inc. v. Shroka, 249 Ga. App. 484, 486, 548 S.E.2d 461 (2001) (quoting Toncee, Inc. v. Thomas, 219 Ga. App. 539, 543(4), 466 S.E.2d 27 (1995)). Georgia courts have interpreted this duty of good faith and fair dealing to limit an employer to only discharging an

employee for cause during the contractual period of employment. *See, e.g.*, Shroka, 249 Ga. App. at 486-87, 548 S.E.2d 461 (affirming the trial court's ruling that the employee's two-day absence from work was not sufficient grounds for discharging him); Heritage of Lanier, Inc. v. Akins, 216 Ga. App. 280, 281-82, 454 S.E.2d 172 (1995); Wojcik v. Lewis, 204 Ga. App. 301, 303-04, 419 S.E.2d 135 (1992). The fact that an employment contract is a verbal agreement does not alter the rights and obligations of the parties. *See generally* Wright v. Cofield, 317 Ga. App. 285, 287-88, 730 S.E.2d 421 (2012); (holding that a question of fact remained for whether the company had orally promised the plaintiff fifteen percent of the net sale proceeds); Dye v. Mech. Enters., Inc., 308 Ga. App. 311, 313-15, 708 S.E.2d 24 (2011) (reversing summary judgment because there was a question of fact for calculating an employee's commission under an oral contract); Walker Elec. Co. v. Byrd, 281 Ga. App. 190, 191-92, 635 S.E.2d 819 (2006) (determining that an oral agreement to pay an at-will employee *per diem* compensation could be enforced).

Whether dismissal can only be for cause "is not dependent upon the presence of the specific words 'for cause'" in the contract or documents relating to the employment, for "[t]he relevant inquiry is into the expectations of the parties involved." Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 914 (11th Cir. 1993) (internal citation and quotation omitted); *see also* DeClue v. City of

Clayton, 246 Ga. App. 487, 489, 540 S.E.2d 675 (2000). A court's analysis of an employment agreement may also consider common understandings and official city documents when the employer is a municipality. *See* DeClue, 246 Ga. App. at 489, 540 S.E.2d 675. Thus, a city charter may be relevant for analyzing whether a city employee could be discharged at will or only for cause. *See, e.g.*, City of St. Marys v. Brinko, ___ Ga. App. ___, 750 S.E.2d 726, 728-29 (2013) (recognizing the plaintiff as an at-will employee because she had failed to provide evidence from "the city's personnel manual, any other official city document, or any ordinance or statute that altered her status as an at-will employee"); City of Buchanan v. Pope, 222 Ga. App. 716, 719-20, 476 S.E.2d 53 (1996) (citing Waters v. Buckner, 699 F. Supp. 900, 902-03 (N.D.Ga. 1988)) (noting that the city charter's provision for the police chief to serve one-year terms took precedence over any police manual provision that might imply the plaintiff had permanent employment that could only be ended for cause).

Thus, Plaintiff could only be discharged from his position as chief of police for cause. Plaintiff testified in his deposition that, at the time of his hiring, Defendants told him that he was being hired as chief of police for a one-year term with the possibility of being reappointed. (Doc. 26, pp. 61-62, 113-15). That is, Plaintiff understood that when he was hired on March 22, 2010, he was beginning a twelve-month term as police chief that would not conclude until

March 21, 2011, with future employment contingent on his reappointment. (Id. at 12-13).

There is no evidence of a provision in Plaintiff's employment contract allowing him to be terminated at will during this twelve-month term. While Plaintiff did respond with "Yes, sir" when asked during his deposition whether he was "an at-will employee," his answer must be placed in context of the overall deposition testimony. (Id. at 13). Subsequent statements from both defense counsel and Plaintiff show they understood the at-will question to be referring to the city council's reappointment decision, that is whether the city council could decide to not reappoint Plaintiff at will at the end of his term. (Id.). The overall tenor of Plaintiff's deposition testimony was that he understood he could not be terminated during his term "as long as [he] was doing [his] job and [he] was doing it effectively, and [he] was accomplishing what they wanted [him] to accomplish." (Id. at 113).

There is additional evidence suggesting Plaintiff could not be discharged at will during the course of his one-year term. The City of Homerville's charter directs that certain city officials, including the chief of police, "shall be elected [by the city council] for terms of one year, and until their successors shall be elected and qualified, unless sooner discharged and removed from office." (Doc. 18-1, p. 13, Section 17). The charter then states that "the city council of Homerville shall

have power and authority to suspend and remove such officers, or impose fines on said officers for gross neglect or malfeasance, after a fair and impartial trial." (Id). The express language in the charter is that the chiefs of police are to serve "terms of one year." Moreover the charter prohibits the city council from terminating a police chief during his term of office unless it had conducted "a fair and impartial trial." Given this clear language along with Plaintiff's understanding of his employment terms, the Court finds that the employment agreement between Plaintiff and the City of Homerville only allowed him to be discharged for cause during his one-year term of office.

Defendants might still obtain summary judgment were they able to show there is no genuine dispute that Plaintiff was dismissed for cause after a  hearing, but this they have failed to do. Even if Plaintiff's certification issues or the loss of access to the county jail had provided Homerville with cause to discharge Plaintiff, there is a factual question about whether Plaintiff was actually dismissed for these reasons. Defendants publicly praised Plaintiff's performance approximately a month before his termination, and their determination to discharge him evidently arose only after he refused to stop the gambling investigation. Defendants' failure to hold a hearing where Plaintiff could be heard and present evidence is, however, the fatal blow to their summary judgment motion. Summary judgment on the breach of contract claim is denied.

13

A brief word on the duration of Plaintiff's contract is prudent. Georgia law distinguishes between a municipality's decision not to reappoint an officer and a decision to terminate the officer during his employment term. Once an employee's term expires, a city council is free to not reappoint him at will regardless of any for-cause provision governing the employment term. *See* Hudgins v. City of Atlanta, 890 F.2d 396, 405-07 (11th Cir. 1989); Pope, 222 Ga. App. at 718, 476 S.E.2d 53. Since Plaintiff's term as Homerville's chief of police ended on March 21, 2011, Defendants would have had every legal right not to reappoint him at that time.

### B.   Wrongful Termination Claim

The motion for summary judgment on the wrongful termination claim is also denied. Defendants limited their argument on the wrongful termination claim to the assertion that Plaintiff was an employee who could be terminated at will. Because this Court has already found that Homerville could only discharge Plaintiff for cause, summary judgment is also denied on the wrongful termination claim. *See* Savannah Coll. of Art & Design, Inc. v. Nulph, 265 Ga. App. 662, 663, 460 S.E.2d 792 (1995) (noting that "when an employment contract requires that termination be 'for cause' only, and the employer fires the employee without cause, a substantive breach occurs, and the employee would be entitled to seek full compensatory damages" in a wrongful termination suit).

### C.      Due Process and Equal Protection Claims

The Court now turns to the due process and equal protection claims.[5] Plaintiff seeks redress under 42 U.S.C. § 1983 for the alleged violation of his constitutional rights. The only argument Defendants raise for the dismissal of the claims brought under § 1983 is that Plaintiff was an at-will employee for the City of Homerville and, therefore, had no property right in his job. Because this Court has already found that Plaintiff was not an at-will employee and could only be dismissed for cause, it also rejects this argument with regards to the equal protection and due process claims. Defendants' motion for summary judgment on the claims brought under § 1983 is denied.

### D.      Violation of O.C.G.A. § 45-11-4 Claim

The Court grants Defendants' motion for summary judgment on Plaintiff's claim that Defendants are guilty of using oppression or tyrannical partiality in the administration of public office under the color of authority in violation of O.C.G.A.

---

[5] Although in his complaint Plaintiff refers to his "federally guaranteed rights under [the] fourth amendment to equal protection and due process of law," (Doc. 1, ¶27), it is actually the Fourteenth Amendment, rather than the Fourth, that protects him against state encroachment on his due process and equal protection rights. *See* Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Hispanic Interest Coal. of Ala. v. Governor of Alabama, 691 F.3d 1236, 1244 (11th Cir. 2012). Defendants have not mentioned this technical error in moving for summary judgment, and there is no evidence they were misled by the mistake. The Court finds that the complaint, despite the reference to the "fourth amendment" rather than the "Fourteenth Amendment," contained "a short and plain statement of the claim showing that the pleader is entitled to relief" sufficient to articulate due process and equal protection claims. Fed. R. Civ. Pro. 8(a)(2).

§ 45-11-4. In his response to Defendants' motion for summary judgment, Plaintiff concedes that he is not entitled to relief under § 45-11-4, (Doc. 23, pp. 7-8), and so this Court need not analyze this claim any further.

### E.    Retaliation Claim

The Court also grants Defendants' motion for summary judgment on the retaliation claim. Plaintiff's complaint contains no mention of a retaliation count brought under Title VII nor does it make factual allegations to support such a claim. The only reference by Plaintiff to a Title VII retaliation claim is in his response brief to the summary judgment motion.

### F.    Tortious Interference with Business Relations Claim

Defendants did not address this claim until their reply to Plaintiff's response to the summary judgment motion. Nowhere does Plaintiff's complaint expressly describe a claim for tortious interference with business relations in those words. The first time Plaintiff uses the phrase "tortious interference with business relations" is in his response brief to the summary judgment motion. However, the complaint contains the following allegation:

> The Plaintiff had a valid contract with the City of Homerville….Defendants Blitch, Hardee, and Vest individually and in their capacity as municipal officers and the City of Homerville *acted improperly and without privilege; acted purposely and maliciously with the intent to injury* [sic] *the Plaintiff; induced the City of Homerville not to continue the employment relationship with the Plaintiff and caused the Plaintiff significant financial injury.*

(Doc. 1, ¶¶41-42) (emphasis added). A denomination of the claim would have been helpful, but the language is sufficient to put the Defendants on notice of the claim. *See* Wilson v. City of Sardis, 263 Ga. App. 178, 179-81, 590 S.E.2d 383 (2003) (quoting Renden, Inc. v. Liberty Real Estate, 213 Ga. App. 333, 334(2), 444 S.E.2d 814 (1994)).

Nevertheless, Defendants must prevail because, as a matter of law, the Defendants already had the authority to terminate Plaintiff's employment and thus could not be third parties to the business relationship. *See* Miles v. Bibb Co., 177 Ga. App. 364, 365, 339 S.E.2d 316 (1985) (recognizing a tortious interference with business relations claim must fail where a defendant is not "a third party unauthorized to discharge an employee"). Summary judgment on this claim is therefore granted.

## IV.    Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion for Summary Judgment (Doc. 18). Plaintiff's claims of Title VII retaliation, violation of O.C.G.A. § 45-11-4, and tortious interference with business relations are dismissed. Plaintiff may move forward with his remaining claims, and this case will be set for trial.

**SO ORDERED**, this the 10th day of February, 2014.

_**s/ Hugh Lawson**_____
**HUGH LAWSON, SENIOR JUDGE**

scr