IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **LAWRENCE WESLEY WALKER,**<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF HOMERVILLE, a Municipal Corporation; MARGARET PEG BLITCH, Individually and as Mayor of the City of Homerville; WILLIE ALFORD HARDEE, Individually and as City Councilman for the City of Homerville; AND WILLIAM VEST, Individually and as a City Councilman for the City of Homerville, Georgia**,<br><br>Defendants. | Civil Action No. 7:12-CV-137 (HL) |

**ORDER**

Before the Court are Defendants' Motion to Certify for Interlocutory Appeal the February 10, 2014 Order on Defendants' Motion for Summary Judgment (Doc. 34), their Motion for Reconsideration of the Order (Doc. 36), and their Motion for Leave to File a Second Motion for Summary Judgment (Doc. 39). After holding a hearing on these motions on March 18, 2014, the Court now denies them for the reasons stated below.

**Motion to Certify for an Interlocutory Appeal**

The motion to certify this Court's Order partially denying summary judgment to Defendants, pursuant to 28 U.S.C. § 1292(b), is denied because the issues which Defendants wish to appeal do not involve pure questions of controlling law. See <u>McFarlin v. Conseco Servs., Inc.</u>, 381 F.3d 1251, 1259 (11th Cir. 2004). Disputes over material facts remain in this case including, according to defense counsel's contention at the hearing, whether Plaintiff even entered an employment contract with the City of Homerville. See <u>id.</u> ("The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact…").

**Motion for Reconsideration**

The motion for reconsideration is also denied. Defendants' principal concern in this motion seems to be with their construction of the Court's Order partially denying summary judgment, particularly with reference to the breach of contract claim. When considering a summary judgment motion, the district court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-movant. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 254-55, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This was the standard the Court applied to Defendants' motion for summary judgment. The Court found that Plaintiff had produced sufficient evidence to allow a reasonable jury to determine

that he had an oral employment contract with the City of Homerville; that he had been reassured his term of office would be for one year; and that the city breached the contract by terminating his employment in bad faith before the term had expired. *See* id. at 248 (noting a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The Court did not conclusively rule on these issues, since Plaintiff did not move for summary judgment, and they must be resolved by a jury. Plaintiff still bears the burden of proving the elements of his claims at trial, and the jury will weigh the credibility of Plaintiff and any other witnesses as they might testify concerning the alleged oral employment contract. *See* Allen v. Victoria's Secret Stores, LLC, ___ F. App'x ___, 2014 WL 1016926 (11th Cir. Mar. 18, 2014); Davila v. Menendez, 717 F.3d 1179, 1184 (11th Cir. 2013).

Defendants' confusion may have crept in where the Court's Order applied Georgia contract law to the purported contract. Viewed in Plaintiff's favor, the evidence showed he had a one-year contract with no provision he could be fired at will during that term. Applying Georgia law to this construction of the contract, the Court found that Plaintiff's employment could not be terminated at will during that year. At trial the jury may very well determine that Plaintiff was never told his employment would last for a definite term, in which case the legal restriction to terminate Plaintiff's employment in good faith would not be imposed on the city.

To the extent Defendants argue that Plaintiff testified in his deposition that when he accepted the job in Homerville he knew the city council would vote on his re-appointment in January 2011, the motion for reconsideration is also denied. During his deposition, Plaintiff repeatedly testified that his contract with the city was on a "year-to-year basis." (Doc. 26, pp. 12, 61, 113-14). Defendants contend that Plaintiff was referring to the calendar year and was testifying that his contract would expire each December. Possibly this is what Plaintiff intended to express, but it is equally reasonable to conclude that Plaintiff was testifying that he had a contract lasting for twelve months, regardless of when the twelfth month ended in the calendar year. Plaintiff certainly argued for this construction of the contract when he responded to the summary judgment motion. Defense counsel could have clarified Plaintiff's testimony during the deposition and may certainly do so at trial, but for summary judgment purposes the Court was required to make reasonable inferences of the testimony in favor of Plaintiff.

There are two points in the deposition transcript that the Court will specifically address.

> Q. Okay. All right. And then you said the next thing that happened was the City Council meeting was held on January 4, 2011, I guess, here in this room that we're in today, correct?
>
> A. There was—there was another meeting that was held, I was told. I think it was, like, on December the 28th, that they went into executive session to

>    supposedly discuss whether or not they were going to retain me.
>
> …
>
> Q. But you did not attend that—
>
> A. No, sir.
>
> Q. --meeting, whatever it was. You don't know who was in attendance, or anything.
>
> A. No, sir. After that meeting, it's—they had their regularly scheduled City Council meeting on January 4th, and that was when they decided to not reappoint me for the upcoming year.
>
> Q. Okay. And it was your understanding that that January 4, 2011, meeting would have been the first Council meeting of that calendar year, correct?
>
> A. Correct.
>
> Q. And all appointments would be considered at that time.
>
> A. Correct.
>
> Q. Including your appointment, or reappointment, or no reappointment as chief of police.
>
> A. Correct.

(Doc. 26, pp. 101-02).

As the transcript makes clear, Plaintiff only testified that he knew, in the days leading up to January 4, 2011, that on that date the city council would vote on his continued employment. The question about Plaintiff's knowledge of the

January 4 meeting immediately followed a lengthy description, prompted by defense counsel, of his actions and conversations with Defendants in the days following the gambling arrests in December 2010. A natural construction of Plaintiff's testimony would be that, sometime after the arrests in December, he learned the city council would hold its first meeting of 2011 on January 4 when it intended to vote on his continued employment. If Defendants wished to learn whether Plaintiff knew when he accepted the job that his reappointment would be voted on the following January, a clearer question should have been posed.[1] The fact that Plaintiff, when first questioned about the January 4 vote during his deposition, called it a "termination" rather than a "reappointment" decision suggests he viewed the city council's vote as falling outside the scheduled reappointment process. (Doc. 26, p. 10).

Defendants have also argued that Plaintiff knew he was an at-will employee, liable to being discharged for any reason during his alleged term of office, but his deposition testimony conflicts with this assertion. Plaintiff only testified he was an at-will employee with regards to the reappointment process, meaning his reappointment as police chief for a new term fell entirely within the discretion of the city council.

---

[1] Counsel asked a similarly ambiguous question when inquiring as to whether "it was your understanding that you would come back up for reconsideration at the beginning of 2011." Plaintiff's affirmative response could just as easily have referred to March 2011, when twelve months of employment would have ended, as January 2011, particularly since he had just said he was employed on a "year-to-year basis." (Doc. 26, p. 12).

6

Q. And it was also your understanding that you served at the will of the City Council of the City of Homerville, correct?

A. That's correct.

Q. You were, in essence, an at-will employee.

A. Yes, sir.

Q. And that they could reappoint you or not—they could reappoint you or not reappoint you, whether they had a reason or not, correct?

A. As long as I was doing my job, I felt like that I was doing what I needed to do to get reappointed.

Q. Okay. I understand you felt you knew what you were doing—you felt you were doing what you needed to do to be reappointed, but it was your understanding that if they didn't think you were doing what you were supposed to be doing, they could decline to reappoint you, correct?

A. I guess they had that option, yes, sir.
…

Q. You allege…that you had a valid contract with the City of Homerville. Is that true?

A. I feel like that I had a verbal agreement, which constitutes a contract from—for a year-to-year basis.

Q. Okay. For a year-to-year basis.

A. Uh-huh (yes).

Q. Is that right?

A. Yes, sir.

7

> Q. At the pleasure of the City Council, correct?
>
> A. As long—I mean, you keep saying at the pleasure of the City Council. I felt like that as long as I was doing my job and I was doing it effectively, and I was accomplishing what they wanted me to accomplish, then I felt like my job was safe. It got to a point, though, that they asked me to do something that was illegal. And at that point, I felt like that they were asking me to violate my oath of office, and I was not going to do that and risk going to jail with criminal charges to save my job. And that's what I felt like I got to the point of, is that they were influencing me to do that. And I—I wasn't going to do that for—
>
> Q. Okay. And who—
>
> A. --to save my job.
>
> Q. --who, with the City, gave you the terms of this contract, this verbal contract that you have?
>
> A. When I met with them in the beginning, that was, I think, one of the things we discussed, is that it would be on a year-to-year basis, as long as I accomplished what they wanted me to accomplish. And like I say, up until this point, I had not received any write-ups, any verbal warnings, nothing indicated to me by any of the City Council that I was doing anything wrong until this search warrant in December….

(Doc. 26, pp. 12-13, 113-14).

Plaintiff's deposition testimony provided a factual basis that required this Court, applying the relevant law, to deny in part Defendants' motion for summary judgment. The Court finds no evidence the testimony was purposefully

misleading. If Defendants find ambiguity in Plaintiff's testimony, then their counsel may clarify it at trial. The motion for reconsideration is denied.

**Motion for Leave to File a Second Motion for Summary Judgment**

This motion is also denied. The time for filing dispositive motions expired on August 29, 2013. (Doc. 14, p. 5). Far from being able to show "excusable neglect" under Federal Rule of Civil Procedure 6(b) for failing to raise Defendants' new arguments prior to the filing deadline, at the motions hearing defense counsel acknowledged being aware of the defenses but said he made a strategic litigation decision not to include them in the initial summary judgment motion.

**SO ORDERED**, this the 26th day of March, 2014.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

scr